Price, J.
The plaintiff in error, on the 8th day of June, 1908, filed in the circuit court of Hamilton county a petition in mandamus against the defendants in error, alleging as authority for bringing the action, Section 1777, Revised Statutes of Ohio. He charged the defendants with failing to perform a duty expressly enjoined upon them by law, and recites the facts upon which the charge is based to be in substance as follows: The city of Cincinnati, through its officials, assuming that certain lands within said city had been dedicated by the owners thereof as a public street, decided that a public- sewer was necessary and should be constructed in said lands and other lands connected therewith, and in pursuance of such determination, directed the construction of the sewer, which was completed under the direction of the proper city authorities, on or about November 11, 1903. But said lands were then the private property of David S. Oliver and John C. Oliver, trustees, and had never been dedicated as a street, nor had they become a public street or highway by any lawful steps, taken for that purpose. The sewer was located and constructed on their said private lands without notice to or knowledge of the owners.
On the 10th day of March, 1908, the said David Oliver and John C. Oliver, as trustees, brought suit in the court of common pleas against the city of Cincinnati to recover the sum of $2,000 as compensation for the trespass committed' upon their-said property. A copy of their petition was made a part of the petition in mandamus, and in the petition for compensation it was alleged that *100 said “the city of Cincinnati, in constructing a public sewer in said city, has taken possession of all of said land (before described in the petition) and constructed a sewer therein, without ever having appropriated the same by law, or having made any compensation therefor in money or otherwise, and is now in possession of all of said land and wholly refuses to make any compensation therefor to plaintiffs herein. On the discovery by the plaintiffs of the unauthorized and unlawful appropriation by defendant of the above described premises in the manner and for the purposes aforesaid (the making of a public sewer), plaintiffs offered to convey the same to defendant by deed in fee simple upon the payment by defendant of the value of the same, which defendant refused to pay. The plaintiffs now offer to convey said premises in fee simple to defendant upon payment by defendant of the value of the same, and they agree that upon the value of said premises being fixed in this case and the payment of the same, the decree of this court (court of common pleas) may be entered ordering a conveyance in fee simple of said premises to defendant, and plaintiffs here tender said conveyance and surrender of title to said premises upon payment as aforesaid. The above described tract of ground is justly worth the sum of $2,000.”
The petition prayed that defendant be decreed to make compensation to them in money for the value of the land so taken and that they recover judgment against the defendant in the sum of $2,000 with interest and costs, and for such other relief as they are entitled to. The defendant in *101 that case — the city of Cincinnati — answered and admitted that the Olivers were the owners of the premises described in the petition, and that it constructed a public sewer thereon “without having appropriated the same by law or having made any compensation therefor in money or otherwise, and is now in possession of all of said land. * * * That if plaintiffs will convey said premises in fee simple to this defendant, upon the value of said premises being fixed in this case, compensation for the same will be made upon the entry of the decree of this court, ordering a conveyance in fee simple of said premises to this defendant. This defendant further states that said property is reasonably worth $31.50 per foot and no more, and agrees that a judgment should be entered against it for the sum of $829.08, upon the presentation to this defendant of a deed for said property signed by the plaintiffs .herein.”
The said answer concludes with the prayer that “the court find that the value of the land taken by defendant was $829.08 and for all other relief as is just and equitable.”
Such was the character of the pleadings in the suit for compensation in the court of common pleas, and that court rendered judgment for said sum of $829.08, on the 19th day of March, 1908, to be paid when a proper and valid deed should be executed and delivered by the Olivers to said city. That court also found that the city had taken possession of said premises and constructed the sewer as alleged in the petition without making compensation and without having appropriated the premises according to law. The deed to the *102 city has been duly executed as ordered by the. court.
The petition for the writ of mandamus proceeds to allege, that on March 26, 1908, the city solicitor of said city transmitted to the sinking fund trustees, the defendants in error, a certified copy of the foregoing judgment, with a letter of explanation of the suit in which. it had been rendered, and requested that said trustees issue a check for the amount of the judgment payable to said Olivers. The solicitor also stated that the case' in which the judgment was rendered was not a case in which the condemnation of property is involved, and recommended .the payment of the judgment as the same is a final judgment.
It is further alleged that said sinking fund trustees have sufficient funds to pay the judgment but refuse to do so, and the relator prays a writ of mandamus commanding them to make payment.
The sinking fund trustees, in answer to the prayer for the writ, say that while it is true they have funds sufficient to pay said judgment, the funds are not applicable to the payment of such judgment; that they are not authorized by law to levy taxes to pay and to pay judgments against the city in cases for the condemnation of property, and claiming that the judgment rendered against the city was rendered in a case for condemnation of property, they declined to pay it.
The circuit court held with the sinking fund trustees and dismissed the petition for mandamus. We are asked to reverse its judgment.
The foregoing statement is not unnecessarily full and complete, when the character of the action *103 in the court of common pleas is the bone of contention. The relator, and now plaintiff in error, asserts that the action was one for trespass and damages — a simple action at law, while the' sinking fund trustees regard it as a case for the condemnation of property, and if that be true, they are forbidden to pay it out of the funds in their custody, by the provisions of Section 101, Municipal Code, especially the last clause of said section. The whole section reads as follows: “All municipal -corporations having outstanding bonds or funded debts shall, through their councils, and in addition to all other taxes authorized by law, levy and collect annually a tax upon all the real and personal property in the corporation sufficient to pay the interest and provide a sinking fund for the extinguishment of all bonds and funded debts and for the payment of all judgments final, except in condemnation of property cases, and the taxes so raised shall be used for no other purpose whatever.” The exception in the last clause is again mentioned in Section 108 of the same code, where it is provided that: “On or before the first Monday in May of each year the trustees of the sinking fund shall certify to council the rate of tax necessary to provide a sinking fund for the future payment of bonds issued by the corporation, and for the payment of final judgments, except in condemnation of property cases.” And Section 110 of the same code provides that “the trustees of the sinking fund shall have charge of and provide for the payment of all bonds issued by the corporation, the interest maturing thereon, and the pay *104 ment of all judgments final against the city or village, except in condemnation of property cases.”
These trustees entrench themselves behind these restrictions, and say that the case which resulted in the judgment for $829.08 was one for the condemnation of property, and therefore it cannot be paid by them from the sinking fund. To complete the shield for their refusal to pay, they cite Section 5 of Article XII of the constitution of Ohio, and Section 2861, Revised ' Statutes, which makes it unlawful “to usb any specific fund for any other purpose than that for which the same was levied, until the purpose for which said tax was levied shall have been satisfied.”
It seems plain that if the judgment whose payment is demanded is final and is not one rendered in a condemnation of property case, the trustees have a duty to perform which is enjoined by the express language of Section 110, supra. We are unable to agree with the learned circuit court in their construction of the suit in which said judgment was rendered. The city did not institute proceedings to condemn the land for sewer purposes. Its officers and agents acted on the assumption that the location selected for the sewer was in a public street — a street by virtue of a dedication by the owners of the land. These owners were not apprised that the city had taken possession until more than four years after the fact, and the answer of the city to the petition for damages or compensation distinctly admits that it took possession without having appropriated the lands and without having made compensation. This was the admission of a trespass — a wrongful pos *105 session, carrying with it the fact impliedly admitted, that the possession was permanent, for sewer purposes.
The action of the Olivers which resulted in the unpaid judgment was not a proceeding to compel appropriation under Section 6448, Revised Statutes, or any other section within our knowledge. If they could have availed themselves of its provisions, which we need not affirm or deny, it is evident that they. did not. There is nothing in their petition in that case to indicate that they were using the remedy prescribed by that statute. Nor is there anything in the circumstances of the city’s possession that could compel the Olivers to resort to a proceeding to compel appropriation.
If the city had instituted proceedings to appropriate the lands, certain well defined statutory steps would have been taken and when the .jury had assessed the compensation and damages, if any, the city had six months’ time to determine whether it would decline to pay the assessment and refuse to enter into possession of the condemned property. Not so in the case brought by the Olivers. They sued for the trespass and wrongful possession. The trespass and wrongful possession were admitted in the answer of the city and it suggested the value of the land to be not more than $829.08, and proposed to pay that amount if the owners would convey the premises which it had seized, to the city. The value of the lands was so found by the court and the judgment rendered. It is a final judgment. The city has no choice as to declining to pay it and refusing to take possession. It is already in possession and *106 had been in possession long before the action for compensation was commenced. There is but one important respect in which the Oliver case resembles a condemnation case, and that is, that each looks to compensation to the owner for lands taken. But one reaches the end by statutory methods and machinery to appropriate or condemn against the will of the land owner. Such is a condemnation of property case, and naturally i.s the kind of case contemplated by the legislature in Sections 101, 108 and 110, supra, for they appear as part of the same code that prescribes the proceedings to secure the appropriation of property, by a municipal corporation and were more likely to have been before the minds of the law makers than a common law action to recover for wrongful entry and possession. It is quite probable that cases for condemnation or appropriation, according to the terms and formula of the statute, and in which final judgment is rendered, were in view, when Section 101 and the kindred sections were adopted. At least, we believe that their restrictions do not apply to a judgment at common law for trespass on real estate and its -wrongful possession.
We are but following the principles laid down by this court in Longworth v. Cincinnati, 48 Ohio St., 637. In fact we are governed by that case, if it was well decided, and of that we entertain no doubt. The first paragraph of the syllabus is:
“Where, in an action for compensation for land unlawfully taken by a municipal corporation without knowledge of the owners, and devoted to public uses by constructing thereon a street, it appears *107 that the owners, upon learning that the land has been so taken, acquiesced in the appropriation as an accomplished fact, and ratified it by tendering a sufficient deed of the premises, conveying title to the corporation, and by offering to allow judgment that, upon the value of the premises being fixed and payment of the same, plaintiffs should be ordered to convey to the corporation, a case is made entitling the plaintiffs to recover the value of the land. Railroad v. Robbins, 35 Ohio St., 531, distinguished.”
We are reminded that mandamus is one of the extraordinary remedies, and in the language of Section 6744, the writ must not be issued where there is a plain and adequate remedy in the ordinary course.
We have observed that if the judgment rendered is final, and is not within the exception made in Section 101, supra, it is the statutory duty of the sinking fund trustees to pay it. This is made plain by Section 110 of the code above referred to. No other recourse than mandamus has been suggested, unless it be ej ectment, and that would be a barren remedy in a case like this. No writ of ejectment could remove the sewer, or eject the city from its possession and control. Its wrongful possession has culminated in a title in fee by conveyance to the city, and the judgment for compensation was substituted. The suit of the Olivers was for compensation and it was not an action or proceeding in condemnation. The statutes defining the authority and duties of sinking fund trustees, some of which we have cited, provide for the payment of such judgments, and the Olivers *108 may not be turned away by the observation that a judgment against the city can be enforced in some other way. The trustees say in their answer that they have sufficient funds to pay the judgment, and we think they should do so.
The judgment of the circuit court is reversed, and this court allows the writ of mandamus as prayed for.

Judgment reversed.

Crew, C. J., Summers, Spear and Davis, JJ., concur.